## BOB FLETCHER v. STATE.

No. A-2450. Opinion Filed July 2, 1917.

(165 Pac. 907.)

1. **INTOXICATING LIQUORS—Offense—Evidence—Books of Express Company.** The books required to be kept by express companies, railroads, and other transportation companies under the provisions of section 6 of chapter 70, Session Laws 1911, when properly identified by the person in possession and control of the same, are admissible in evidence in a case where the defendand is charged with a violation of the prohibitory liquor laws of this state.

2. **SAME—Unlawful Sale—Question for Jury.** Evidence examined, and **held** sufficient to authorize the trial court to submit the case to the jury.

3. **TRIAL—Remarks of County Attorney.** Certain remarks of the county attorney, unauthorized by the evidence and tending to appeal for the infliction of a severe penalty, condemned. On account of these remarks the judgment is modified, and the penalty reduced to the minimum.

*Appeal from County Court, Custer County.*

Bob Fletcher was convicted of unlawfully selling intoxicating liquor, and he brings error. Modified and affirmed.

*M. L. Holcombe,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *R. McMillan,* Asst. Atty. Gen., for the State.

MATSON, J.   It is first contended that the court erred in admitting in evidence certain records of the American Express Company kept at Custer City, Okla., the place where the alleged sale was made, showing shipments of both whisky and beer to this plaintiff in error and received by him during the period of one month previous to the date of the alleged offense.   It is contended that these records were not properly identified or authenticated. These records were introduced in connection with the witness J. M. Cummings, who testified that he was the agent for the Frisco Railroad Company at Custer City, Okla., and that he had possession of the records of the office of that station showing the shipments of intoxicating liquors received by various persons of that town.   The records appear to be those of the United States Express Company, and it is contended that there is no showing that the witness was the agent for the express company, *et cetera.*   The witness, however, testified that these were a part of the records of his office, and that they were in his possession and under his control; that they were records showing the shipments of intoxicating liquors, and that he was familiar with the same.   Had plaintiff desired to do so, he could have examined the witness as to whether or not the records of the express company were kept as a part of the railroad records at that station.   This he did not do.   It is a matter of general knowledge in this state that in towns the size of Custer City it is the policy of such companies to have but one agent, who attends to both the railroad and express business.   In the

absence of a contrary showing, where the witness testifies. that he is the custodian of such records, that they are under his possession and control, and that he is familiar with them, the proof is sufficient to admit of their introduction in evidence under the provisions of section 6 of chapter 70, Session Laws 1911, which provides as follows:

"All express companies, railroad companies and transportation companies within this state are hereby required to keep a separate book in which shall be entered, immediately upon receipt thereof, the name of the person to whom liquors are shipped, the sale of which is prohibited by laws of this state, the amount and kind received, the date when received, the date when delivered, and by whom delivered, and to whom delivered, after which record shall be a blank space in which the consignee shall be required to sign his name, before such liquors are delivered to such consignee, which book shall be open to the inspection of any officer of this state, whether such officer be a state, county, or municipal officer, at any time during business hours of the company. Such books shall constitute *prima facie* evidence of the facts therein stated and be admissible as evidence in any court of this state having jurisdiction or in any manner empowered with the enforcement of the prohibition laws of this state."

The record introduced was shown to be one required to be kept under the foregoing statute. After proper identification the original was admissible in evidence in this case.

It is also contended that the court erred in refusing to sustain the motion of the plaintiff in error to direct a verdict of not guilty at the conclusion of the state's evidence. The evidence in this case is substantially as follows:

The prosecuting witness, Harry Koch, testified that several boosters from the town of Clinton were traveling

about over Custer county and adjoining counties on the 17th day of June, 1914, scattering posters to advertise the coming Fourth of July celebration at Clinton. They were traveling in a Ford car, and when they got to Custer City, Koch, who was an old-time friend of the defendant, Fletcher, instructed the driver of the car to drive to Fletcher's house in the southwest part of that town. When they got to the house Koch went in and inquired of Fletcher if he had something to drink, to which Fletcher replied, "I have got some tin top," and Koch said, "Well, give me some tin top." He was given five or six bottles of "tin top." Koch also saw a half pint bottle of whisky, sitting on the shelf in the room, and asked Fletcher what he would take for it. Fletcher said he would not sell it, but that he was not looking and that he (Koch) could steal it if he wanted to. Koch then took the whisky, and left $1.25 on a table in the room. He took the whisky and the so-called "tin top" out to the automobile, and he and the other parties with him drank it while on the trip. The charge is for selling beer and whisky to Koch. Koch testifies that he does not know what the "tin top" was; that it was in beer bottles; that he had drunk beer before, but could not tell whether this was beer or not. He admitted, however, getting the whisky, but said he did not intend to leave any money for the whisky. The parties who were with Koch in the car testified that they drank some of this stuff that was in the beer bottles, and that it tasted like beer and looked like beer; that it did not have any labels on it; that they drank a small bottle of it apiece, and did not feel any intoxicating effects. They were uncertain as to whether or not it was beer. Some of them, however, drank some liquor which they testified positively to be whisky. It was also shown by the record

of the express office at Custer that on the 16th day of June, 1914, the day before the boosters made this trip, the defendant, Fletcher, had received from the express office a cask of beer, and had receipted for the same. He had also about a month previous to that date received a package containing a gallon of whisky. A day or two after the booster trip the sheriff, armed with a search warrant, searched the defendant's residence and found therein a cask or barrel of empty beer bottles. The bottles were not labeled, but on the top blown in the glass they were branded "beer." The question, therefore, in this case is whether or not the facts were sufficient to authorize the trial court in submitting the question of whether or not there was an implied sale of both beer and whisky on the part of the defendant to the prosecuting witness, Koch. From the manner in which these witnesses testified it is clearly evident that they were very reluctant witnesses for the state. The prosecuting witness was a personal friend of the defendant, and had known him some eight or ten years. He evidently was well enough acquainted with him to know that he could obtain intoxicating liquors at his home; the prosecuting witness at one time having been a resident of Custer City and familiar with the people who lived there. It is undisputed that on the day before this transaction took place the defendant became possessed of a cask of beer. The fact that he designated it "tin top" appears, and must have been so considered by the jury, to be a subterfuge. We believe the evidence sufficient to justify the conclusion of the jury. The manner in which the whisky was obtained by the prosecuting witness indicates that the giving of the whisky was also a subterfuge to avoid a sale. We cannot say that the court

erred in refusing to instruct or direct a verdict of not guilty at the conclusion of the state's case.

The only evidence offered by the defendant was that of two physicians of Custer City who testified that they had never received or obtained any liquor from the defendant. One of these witnesses, without objection on the part of defendant's counsel, was permitted on cross-examination to testify that among certain people of Custer City the defendant had the reputation of being a booze peddler or bootlegger. The evidence of these two physicians had no direct bearing upon the question of whether or not a sale was made in this instance. Their evidence in no way conflicted with the testimony of the state's witnesses.

It is also contended that the judgment should be reversed because of certain prejudicial remarks made by the county attorney in his closing argument to the jury, which alleged remarks are contained in a recital in the case-made which shows that counsel for the defendant objected thereto and asked the court to withdraw the same from the consideration of the jury, which request was denied and exception reserved. In the argument the county attorney called the defendant "a devilish bootlegger," and stated that this was his second offense. There is no evidence in the record that the defendant had theretofore ever been convicted of violating the prohibitory liquor laws of this state. The remarks were prejudicial, and, in our opinion, had a tendency to prejudice the jury to such an extent that a severe penalty was given the defendant.

In view of these remarks it is our opinion that the judgment should be modified by reducing the fine from $200 to $50, and the term of imprisonment from 90 days

to 30 days, and that the judgment as thus modified be affirmed.

DOYLE, P. J., and ARMSTRONG, J., concur.